**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LINDA E. ROSS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. CIV-08-96-F |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. __). As the parties have briefed their positions, the matter is at issue. For the following reasons, it is recommended that the decision of the Commissioner be affirmed.

**I. PROCEDURAL HISTORY**

Plaintiff protectively filed an application for disability insurance benefits on March 14, 2005, alleging a disability onset date of December 31, 1994, caused by a stroke affecting

the left side of her body, aches and pains, and depression.[1]  Tr. 84-86, 94, 99.  Her application was denied on initial consideration and on reconsideration at the administrative level.  Tr. 65-66, 68-71, 73-75. Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on January 24, 2007.  Tr. 35, 38-64. Plaintiff appeared in person with her attorney, and offered testimony in support of her application.  Tr. 40, 43-58. A vocational expert also testified at the request of the administrative law judge. Tr. 59-63.  The administrative law judge issued his decision on April 27, 2007, finding that Plaintiff was not disabled within the meaning of the Social Security Act, and thus she was not entitled to benefits.  Tr. 15-17, 18-27.  The Appeals Council denied Plaintiff's request for review on November 26, 2007, and therefore the decision of the administrative law judge became the final decision of the Commissioner.  Tr. 3-5.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal.  Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial,

---

[1] At the hearing, Plaintiff amended her alleged onset date to March 31, 2000, the final day she was insured for disability insurance benefits.  Tr. 41-42.

>   taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process. Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). The claimant bears the burden to establish a prima facie case of disability at steps one through four. Id. at 751 & n.2. If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience. Id. at 751.

### III. THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 19-20. He first found that Plaintiff had not engaged in substantial gainful activity since her amended onset date of March 31, 2000. Tr. 20. At steps two and three, the administrative law judge found that, as of the date last insured, Plaintiff suffered from a history of cerebrovasular accident (CVA) in the remote past (after which she returned to work), history of seizures, asthma, hypertension, mild degenerative disk disease of the lumbar and cervical spine, and history of bilateral shoulder pain, and found that these impairments were severe, but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4. Tr. 20-21. The administrative law judge next

found that, on the date last insured, Plaintiff retained the residual functional capacity to occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds; stand and/or walk at least six hours of an eight-hour workday (with normal breaks) and sit at least six hours out of an eight hour workday (with normal breaks), limited by the need to avoid hazards such as heights, open machinery, and concentrated exposure to fumes, odors, dust, and gases, and the need to avoid work above shoulder level. Tr. 21. Based on this residual functional capacity assessment, the administrative law judge found at step four of the sequential evaluation process that Plaintiff was not able to perform her past relevant work. Tr. 25. Considering Plaintiff's age, education, work experience, residual functional capacity and the testimony of the vocational expert, the administrative law judge concluded that there are jobs in the national economy existing in significant numbers that Plaintiff can perform. Tr. 25-26. Accordingly, the administrative law judge found that Plaintiff was not disabled and not entitled to disability insurance benefits. Tr. 26-27.

**IV. PLAINTIFF'S ARGUMENTS ON APPEAL**

Plaintiff has not organized her brief in a manner that raises specific issues for judicial review. Her brief contains one general point that "Medical Evidence and Testimony Support a Finding of Disability," and then makes several vague arguments with little basis in the record. See Opening Brief, pp. 3-6. Judicial review is not invoked by scattered statements within a brief that amount to nothing more than perfunctory complaints neither framing nor developing an issue. See Murrell v. Shalala, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994). Plaintiff's failure to designate specific issues for review, failure to make arguments with

references to the record, and failure to cite applicable legal authorities waives the claims she purports to bring in this appeal.

Nevertheless, the undersigned has reviewed the record and will address the points it appears that Plaintiff intended to raise in her brief on appeal. The undersigned takes her claims to be: 1) the step five determination is not supported by substantial evidence because the vocational expert did not identify work Plaintiff could perform; 2) the administrative law judge "misinterpreted" the medical records and failed to employ correct legal standards in the decision because he did not give valid reasons for discounting certain records; and 3) the administrative law judge did not employ correct legal standards in evaluating Plaintiff's credibility. See Opening Brief, pp. 4-6.

## V.  DISCUSSION

Given that Plaintiff's insured status expired on March 31, 2000, the question before the administrative law judge was whether the evidence Plaintiff submitted established a disability on or before that date. See Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991). The medical records generated prior to and near the expiration of Plaintiff's insured status show that Plaintiff was hospitalized in December 1993 for a treatment of a "right sided cardiovascular accident," with right-sided residual weakness and leg pain. Tr. 190, 192. Testing was "unremarkable" except that marijuana and cocaine were discovered in Plaintiff's system which the examining physician opined could have been the cause of Plaintiff's CVA. Tr. 191. An MRI scan showed "nothing significant" except "possibly an old artifact." Tr. 191. Plaintiff was counseled that her 26-year history of smoking, combined with illegal drug

use - particularly cocaine - may have contributed to her CVA and was urged to cease smoking and to refrain from using illegal drugs. Tr. 190-91.

Plaintiff visited the emergency room in May of 1994 with complaints of chest pain and coughing, and was diagnosed with bronchitis. Tr. 180-81. In December 1994, Plaintiff was admitted to the hospital for complaints of right-sided weakness and upper extremity pain. Tr. 163. Computerized tomography and arteriogram studies produced nothing remarkable, but it was noted that there was evidence of a small vessel ischemic change that appeared to be old. Tr. 163. In July 1996, Plaintiff was seen in the emergency room with complaints of shoulder pain. Tr. 160. An MRI of Plaintiff's shoulder revealed the existence of a torn rotator cuff. Tr. 161.

A few months later, in September 1996, Plaintiff was evaluated by Stuart Hinkle, D.O., for a retirement board medical evaluation performed at the request of her employer, Ford Motor Company. Tr. 508. At the time of the examination, Plaintiff reported experiencing neck, back, and left shoulder pain, and right sided weakness. Tr. 509. Dr. Hinkle interviewed Plaintiff, reviewed available medical records, including those from Plaintiff's long-term primary care physician, Dr. Aletha Oglesby, and physically examined Plaintiff. Tr. 508-10. His diagnoses and historical diagnoses included: 1) bicipital tensosynovitis, left shoulder; 2) unspecified etiology for diminished deep tendon reflex and extensor hallucis longus function, right leg, 3) apparent conscious versus unconscious misrepresentation of physical condition and capabilities, 4) acute mental depression, 5) multiple past/resolved cervicothoracic and lumbar strains, 6) three motor vehicle accidents,

and 7) unconfirmed "seizure" and "stroke." Tr. 510. He opined that Plaintiff was permanently and totally disabled, and also concluded that Plaintiff's "psychiatric impairment has eventuated in a perceived personal level physical disability." Tr. 511. In making these findings, Dr. Hinkle acknowledged that his opinion differed from that of Plaintiff's primary care physician, who previously determined that Plaintiff was "permanently but not totally disabled." Tr. 511.

Plaintiff received treatment at The Warren Clinic in April and December of 1998 for complaints of neck pain, shoulder pain, and breathing difficulties. Tr. 438-40. In August 1998, Plaintiff visited the emergency room and was treated for cocaine ingestion. Tr. 275, 278. Plaintiff sought emergency room treatment for chest pain accompanied by nausea, vomiting, cough, fever, and painful breathing on April 4, 1999. Tr. 245. She was diagnosed with pleurisy and instructed to follow up with her primary care physician. Tr. 245, 247. Plaintiff again was treated in the emergency room on April 18, 1999, for complaints of difficulty breathing, productive cough, left-sided chest pain, and generalized aches and pains. Tr. 239. It was assessed that Plaintiff suffered from musculoskeletal chest pain and pneumonia in resolution. Tr. 239-40. Plaintiff visited the emergency room again in May 1999 and June 2000 with complaints of chest pain, shallow breathing, and coughing. It was noted that Plaintiff had fractured her rib. Tr. 152-53, 157.

Plaintiff elaborated on the effects of her medical conditions via her testimony at the hearing. Specifically, she testified that her "stroke" caused overall right-sided weakness and that she believed she continued to experience seizures although she was unsure because she

took medication to control them. Tr. 45-46, 48. She stated that the "stroke" caused her to experience memory loss and right sided weakness, and that she has been unable to use her dominant, right hand on an extended basis. Tr. 48-49, 56.

Plaintiff also testified that she has had breathing problems ever since she ceased working in 1993. Tr. 47. Plaintiff explained that she has significant bodily pain, including shoulder pain, that limits her ability to lift, move about the house, interferes with her ability to sleep, requires her to use a TENS unit and to take medication that makes her drowsy. Tr. 45, 50-53.

The undersigned will address Plaintiff's arguments in the reverse order they were raised.

### 1. Credibility Determination

Essentially, Plaintiff contends that the administrative law judge made an adverse credibility determination concerning her testimony at the hearing without properly explaining his reasons for doing so. See Opening Brief, p. 5. According to Plaintiff, "[n]o mention was made of [Plaintiff's] credibility." Id. Thus, argues Plaintiff, her testimony was "unrefuted" and "uncontroverted" and, as such, should have been "taken at face value" as an adequate basis for concluding she was disabled. Id.; Reply, p. 2.

It is more than slightly disconcerting that Plaintiff's attorney raised this argument given that the administrative law judge clearly and explicitly evaluated Plaintiff's credibility in the decision. The administrative law judge spent several pages of his discussion setting forth the legal standard applicable to credibility evaluations, Tr. 21-23, discussed the

limitations Plaintiff testified that she suffered as a result of her medical conditions, and then stated: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 23. The administrative law judge then explained the basis for his credibility finding as he discussed Plaintiff's medical records in the remainder of the decision. See Tr. 21, 23-25. At a later point in the decision, the administrative law judge also stated his conclusion that "the claimant's statements are not fully credible with respect to the severity of her impairments at the time of her alleged onset date of March 31, 2000." Tr. 24. The Commissioner notes inasmuch in his brief. Response Brief, p. 14.

The framework for the proper analysis of a claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). The administrative law judge must consider: (1) whether the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established by objective medical evidence, (2) if so, whether considering all the evidence, both objective and subjective, there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).

When the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. Social Security Ruling 96-7p, 1996 WL 374186, at *2. Some of the factors that may be considered in assessing the credibility of a claimant's statements about the effects of her symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain or other symptoms; (5) treatment, other than medication, the claimant has received for relief of pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms. Id. at *3; 20 C.F.R. § 404.1529(c)(3); Luna, 834 F.2d at 164-66; see also Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988) (listing other factors including "frequency of medical contacts, . . . subjective measures of credibility that are peculiarly within the judgment of the [administrative law judge], the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.").

Credibility determinations are peculiarly the province of the finder of fact, and should not be upset when they are supported by substantial evidence. Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). An administrative law judge must

closely and affirmatively link his credibility findings to substantial evidence; a conclusory finding is insufficient. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). However, a "formalistic factor-by-factor recitation of the evidence" is not required. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An administrative law judge's credibility analysis is sufficient so long as the decision sets forth the specific evidence relied upon in making the determination. Id.

The administrative law judge's credibility discussion is adequate because in evaluating the credibility of Plaintiff's subjective complaints, the administrative law judge considered the appropriate factors and linked his findings to specific substantial evidence in the record. For example, the administrative law judge discussed Plaintiff's testimony that her medications resulted in negative side effects, including drowsiness, but he also noted that nothing in the medical records indicated that if properly regulated, the Plaintiff's medications would cause a severe problem prior to the date last insured. Tr. 21; see Luna, 834 F.2d at 166. Further, the administrative law judge recognized that Plaintiff testified to memory loss and an inability to concentrate, but discounted the value of these complaints because they were not corroborated by any medical evidence, Tr. 21, and he also noted that to the extent Plaintiff attributes these difficulties to her CVA, she was able to return to work after the incident. Tr. 25; see Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) (per curiam) (deciding that ability to work despite impairment suggests claimant is not disabled); see also

Eden v. Barnhart, No. 04-7019, 109 Fed. Appx. 311, 315 (10th Cir. Sept. 15, 2004).[2] As to the physical limitations Plaintiff testified she experienced from her neck and back problems, the administrative law judge discussed how Dr. Hinkle's physical examination did not reveal the existence of abnormalities that would account for the severity of Plaintiff's subjective complaints. Tr. 23-24. Finally, the administrative law judge discussed how, insofar as the time prior to the expiration of Plaintiff's insured status was concerned, Plaintiff was able to control the pain and effects of her shoulder problems with medication. Tr. 24; see Luna, 834 F.2d at 166.

Although, as indicated above, the administrative law judge did not accept all of the limitations to which Plaintiff testified, he clearly considered them and discounted their significance primarly because of the lack of objective corroborative evidence in the record, which was his prerogative. See Diaz, 898 F.2d at 777. His finding is entitled to deference on judicial review. Id. The administrative law judge's comparison of Plaintiff's medical records with her testimony provided an adequate justification and explanation for his credibility finding and provides no basis for remanding the Commissioner's decision.

## 2. Treatment of Plaintiff's Medical Records

Plaintiff complains that the administrative law judge inaccurately interpreted her medical history as documented in her medical records. Opening Brief, p. 4. Giving a few examples, she argues that the administrative law judge interpreted the medical evidence in

---

[2] This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

the light most favorable to a finding of nondisability. She further complains that the administrative law judge gave no reasons for discounting certain records. Id. at 5.

The Commissioner contends that Plaintiff has waived these complaints by failing to provide citation to specific records in support of her claims, and failing to specifically explain how the administrative law judge's findings conflicted with the medical evidence. Response Brief, pp. 12-15. The Commissioner also offers various arguments refuting Plaintiff's contention that the administrative law judge only interpreted the evidence in the light most favorable to a finding of nondisability. Id.

An administrative law judge is not required to discuss every piece of evidence, but the decision must demonstrate the administrative law judge considered all of the evidence. When discussing the evidence supporting a decision, the administrative law judge must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Furthermore, an administrative law judge "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). Moreover, an administrative law judge "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotation omitted).

Plaintiff first takes issue with the administrative law judge's characterization of her recovery from her CVA as "good," arguing that her testimony and medical records show

otherwise though Plaintiff has cited no medical record in support of her claim. Testing performed at the time of Plaintiff's CVA in December 1993 revealed no remarkable or significant neurologic effects of the incident. Tr. 191. Indeed, Plaintiff returned to work after the incident, Tr. 76, 84, 100, which is inconsistent with any claim that her CVA caused long-term complications that interfered with her ability to work. See Orrick, 966 F.2d at 370; see also Eden, No. 04-7019, 109 Fed. Appx. at 315.

The medical records contain an entry documenting Plaintiff's complaints of right-sided weakness - in December 1994 - approximately one year after the CVA. Tr. 163. She also complained about right-sided weakness to Dr. Hinkle in September 1996. Tr. 508-509. The administrative law judge discussed these records in his decision, clearly showing that he considered them. Tr. 23-24. Additionally, the administrative law judge explained his reasons for the weight he accorded to the medical records, particularly Dr. Hinkle's report. Tr. 24-25. Moreover, though Plaintiff testified at her hearing to greater limitations than those reflected in her records, the administrative law judge also provided reasons for discounting Plaintiff's complaints, and reiterated in his decision that the only evidence relevant to the question was that which showed disability prior to the expiration of her insured status. Tr. 25. Thus, Plaintiff's hearing testimony about her current limitations that she attributes to her CVA is of little value.

Plaintiff also complains that she took significant medications prior to the expiration of her insured status and that any mix of these medications would make it impossible to drive and remain employed. Opening Brief, p. 5. Except for one, the records Plaintiff cites are

nothing more than lists of current medications, do not contain any information regarding the side effects of these medications, and provide no support for her assertion. See Tr. 104, 110, 140,149, 166, 192. 235, 253-54, 355-56. The one record Plaintiff cites to that does address the side effects of her medications shows she has "none." Tr. 104. Further, Plaintiff's medical records contain no entries indicating that she ever complained about suffering negative side effects from her medications. Accordingly, the administrative law judge did not "misinterpret" Plaintiff's medical records; they simply do not support her claim.

The administrative law judge's discussion of Plaintiff's medical records pertaining to the time frame under consideration was thorough, and shows that he considered all of the relevant medical evidence. The only medical opinion that the administrative law judge did not accept was Dr. Hinkle's opinion concerning the extent of the limitations occasioned by Plaintiff's alleged mental and physical impairments, and that she was totally and permanently disabled. See Tr. 24-25. However, the administrative law judge gave valid reasons for his treatment of this opinion, explaining that Dr. Hinkle's conclusions were not supported by his own testing, and that he did not conduct testing enabling him to give an informed opinion as to certain subjects. Tr. 25. Further, Dr. Hinkle's conclusion that Plaintiff was permanently and totally disabled is not a medical opinion entitled to any special significance. 20 C.F.R. § 404.1527(e)(1).

Contrary to Plaintiff's contentions, the administrative law judge did not misinterpret Plaintiff's medical records or present them only in the light most favorable to a finding of nondisabilty. Further, he did not pick and choose from among the reports, discussing only

those records that supported his conclusions. Rather, he employed correct legal standards in evaluating Plaintiff's medical records and explaining the treatment he gave to each. This point of error affords Plaintiff no relief.

### 3. Step Five Findings

Plaintiff contends that the administrative law judge was unable to identify any jobs existing in significant numbers "at the hearing" or "in the Order," that someone with her residual functional capacity and vocational characteristics could perform. She alleges that "[t]he vocational expert agreed no jobs are available for [Plaintiff] with her testified and uncontroverted impairment." Opening Brief, p. 4.

In response, the Commissioner notes that the hearing transcript shows that the vocational expert was able to identify jobs Plaintiff was capable of performing with the limitations the administrative law judge concluded were supported by the record. Response Brief, p. 3, 12.

Once again, it is vexing that Plaintiff makes an argument lacking support in the administrative record and that is actually contradicted by portions of the record. The administrative law judge ultimately concluded that Plaintiff retained the residual functional capacity to perform light work, limited by the need to avoid hazards such as heights, open machinery, and concentrated exposure to fumes, odors, dust, and gases, and the need to avoid above-shoulder-level work. Tr. 21. At the hearing, the administrative law judge asked the vocational expert to give examples that someone with these exact limitations and exact same vocational characteristics that he found Plaintiff possessed, would be capable of

performing. Tr. 59-60. The vocational expert identified the jobs of arcade attendant, cafeteria attendant, and inter-office mail clerk in response. Tr. 60. The administrative law judge discussed this testimony in the decision before concluding that a finding of not disabled was appropriate. Tr. 26. There is no basis for Plaintiff to claim that the administrative law judge was unable to identify any jobs existing in significant numbers "in the Order" that someone with her residual functional capacity and vocational characteristics could perform because the administrative law judge explicitly did so in his decision. Tr. 26.

"The claimant bears the burden of establishing a prima facie case of disability at steps one through four." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant successfully meets his burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given her age, education, and work experience. Id. The Commissioner may meet the step five burden with vocational expert testimony concerning what work the claimant has the capability to perform. See Ragland v. Shalala, 992 F.2d 1056, 1058 (10th Cir. 1993); see also 20 C.F.R. § 404.1566(e). "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991)(quotation omitted). However, in formulating a hypothetical question, the administrative law judge must rely only on those impairments supported by substantial evidence in the record. See Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990).

As previously mentioned, the administrative law judge asked the vocational expert whether there are any jobs that someone with Plaintiff's vocational characteristics who was limited to light work with some additional limitations could perform. Tr. 59-60. The vocational expert identified three. Tr. 60. The administrative law judge then changed his hypothetical question and asked whether there are jobs that someone with Plaintiff's vocational characteristics limited to sedentary work with the same additional limitations could perform and the vocational expert identified four jobs but he mentioned that the additional limitations would reduce the number of those jobs that the hypothetical individual could perform. Tr. 60-61.

Plaintiff's attorney asked the vocational expert to identify sedentary work for a right-handed individual who could lift only one pound with the right hand, and only occasionally use the right hand and arm for work. Tr. 62. The vocational expert testified that such limitations would preclude all sedentary work. Tr. 62. Plaintiff's attorney also asked the vocational expert whether a hypothetical person with Plaintiff's vocational characteristics, who was limited to light/sedentary work but required breathing treatments three times per day, could perform any work. Tr. 62. The vocational expert opined that the individual could perform one breathing treatment at lunch, but that some accommodation would have to be made for the other two. Tr. 63.

Assuming for the moment that Plaintiff's claim that the vocational expert was unable to identify any work that someone with Plaintiff's "testified" and "uncontroverted" impairments could perform is true, it makes no difference because the vocational expert

identified work existing in significant numbers that someone with the limitations established by the medical evidence could perform. Specifically, the vocational expert opined that someone, with the limitations the administrative law judge found were established by Plaintiff's medical records, could work as an arcade attendant, cafeteria attendant, or inter-office mail clerk. Tr. 60. Thus, the vocational expert's testimony constituted substantial evidence the Commissioner could use to meet his step five burden. See 20 C.F.R. § 404.1566(e).

Plaintiff's testimony concerning her current limitations was of little value because the question at issue was not whether Plaintiff could currently perform work, but whether, as of March 31, 2000, there was work she could perform given the limitations the evidence established on that date. No records show that Plaintiff experienced the limitations related in her attorney's hypothetical questions to the vocational expert. Further, as discussed earlier, the administrative law judge properly discounted the value of Plaintiff's subjective complaints for the reasons explained in his credibility analysis. Thus, he was not required to pose hypothetical questions to the vocational expert containing limitations supported only by Plaintiff's testimony. See, e.g., Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995) (restating "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record.").

The questions the administrative law judge asked of the vocational expert accounted for the limitations established by the evidence, and contained only those limitations established by the evidence. Accordingly, the vocational expert's identification of three jobs

existing in significant numbers amounted to substantial evidence to sustain the Commissioner's step five burden. This point of error provides not basis for granting Plaintiff relief.

## **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the administrative law judge applied correct legal standards in the decision, and that the decision is supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner of Social Security Administration be affirmed. The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by November 26th, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 6th day of November, 2008.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE